| B 104<br>(Rev. 2/92) **ADVERSARY PROCEEDING COVER SHEET**<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |

**PLAINTIFFS**
[Plaintiff's Name]
Grayson, Kubli & Hoffman, P.C.

**DEFENDANTS**
[Name of Defendant]
Amanda Alexx Giovanni

**ATTORNEYS** (Firm Name. Address, and Telephone No.)
James A. McMillan, Esq., Grayson, Kubli & Hoffman, P.C.
1420 Spring Hill Road, Ste. 230
McLean, VA 22102
703-749-0000

**ATTORNEYS** (If Known)
Richard S. Stolker. Esq.
110 N. Washington St., Ste. 230
Rockville, MD 20850
301-294-9500

**PARTY** (Check one box only)    ☒ 1 U.S. PLAINTIFF    ☐ 2 U.S. DEFENDANT    ☐ 3 U.S. NOT A PARTY

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
Complaint to declare debt nondischargeable pursuant to 11 U.S.C. Sect. 523.

**NATURE OF SUIT**
(Check the one most appropriate box only.)

☐ 454 To Recover Money or Property
☐ 435 To Determine Validity, Priority, or Extent of a Lien or Other Interest in Property
☐ 458 To obtain approval for the sale of both the interest of the estate and of a co-owner in property
☐ 424 To object or to revoke a discharge 11 U.S.C. §727

☐ 455 To revoke an order of confirmation of a Chap. 11, Chap. 12, or Chap. 13 Plan
☒ 426 To determine the dischargeability of a debt 11 U.S.C. §523
☐ 434 To obtain an injunction or other equitable relief
☐ 457 To subordinate any allowed claim or interest except where such subordination is provided in a plan

☐ 456 To obtain a declaratory judgment relating to any of foregoing causes of action
☐ 459 To determine a claim or cause of action removed to a bankruptcy court
☐ 498 Other (specify)

**ORIGIN OF PROCEEDINGS**
(Check one box only.)
☒ 1 Original Proceeding    ☐ 2 Removed Proceeding    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from Another Bankruptcy Court    ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

| **DEMAND** | NEAREST THOUSAND<br>$ 769,000.00 plus interest | OTHER RELIEF SOUGHT | ☐ JURY DEMAND |

**BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES**

NAME OF DEBTOR
Amanda Alexx Giovanni

BANKRUPTCY CASE NO.
03-14006

DISTRICT IN WHICH CASE IS PENDING
Eastern District of Virginia

DIVISIONAL OFFICE
Alexandria

NAME OF JUDGE
Mitchell

**RELATED ADVERSARY PROCEEDING (IF ANY)**

PLAINTIFF
Not applicable

DEFENDANT

ADVERSARY PROCEEDING NO.

DISTRICT

DIVISIONAL OFFICE

NAME OF JUDGE

**FILING FEE** (Check one box only.)    ☐ FEE ATTACHED    ☐ FEE NOT REQUIRED    ☐ FEE IS DEFERRED

| DATE<br>1/8/04 | PRINT NAME<br>James A. McMillan | SIGNATURE OF ATTORNEY (OR PLAINTIFF) |

B-104

## ADVERSARY PROCEEDING COVER SHEET (Reverse Side)

This cover sheet must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney) and submitted to the Clerk of the court upon the filing of a complaint initiating an adversary proceeding.

The cover sheet and the information contained on it *do not* replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. This form is required for the use of the clerk of the court to initiate the docket sheet and to prepare necessary indices and statistical records. A separate cover sheet must be submitted to the clerk of the court for each complaint filed. The form is largely self explanatory.

**Parties.** The names of the parties to the adversary proceeding *exactly* as they appear on the complaint. Give the names and addresses of the attorneys if known. Following the heading "Party," check the appropriate box indicating whether the United States is a party named in the complaint.

**Cause of Action.** Give a brief description of the cause of action including all federal statutes involved. For example, "Complaint seeking damages for failure to disclose information, Consumer Credit Protection Act, 15 U.S.C. §1601 et seq.," or "Complaint by trustee to avoid a transfer of property by the debtor, 11 U.S.C. §544."

**Nature of Suit.** Place an "X" in the appropriate box. Only one box should be checked. If the cause fits more than one category of suit, select the most definitive.

**Origin of Proceedings.** Check the appropriate box to indicate the origin of the case:

            1. Original Proceeding.
            2. Removed from a State or District Court.
            4. Reinstated or Reopened.
            5. Transferred from Another Bankruptcy Court.

**Demand.** On the next line, state the dollar amount demanded in the complaint in thousands of dollars. For $1,000 enter "1," for $10,000 enter "10", for $100,000 enter "100," if $1,000,000, enter "1000." If $10,000,000 or more, enter "9999." If the amount is less than $1,000, enter "0001." If no monetary demand is made, enter "XXXX." If the plaintiff is seeking non-monetary relief, state the relief sought, such as injunction or foreclosure of a mortgage.

**Bankruptcy Case in Which This Adversary Proceeding Arises.** Enter the name of the debtor and the docket number of the bankruptcy case from which the proceeding now being filed arose. Beneath, enter the district and divisional office where the case was filed, and the name of the presiding judge.

**Related Adversary Proceedings.** State the names of the parties and the six digit adversary proceeding number from any adversary proceeding concerning the same two parties or the same property currently pending in any bankruptcy court. On the next line, enter the district where the related case is pending, and the name of the presiding judge.

**Filing Fee.** Check one box. The fee must be paid upon filing unless the plaintiff meets one of the following exceptions. The fee is not required if the plaintiff is the United States government or the debtor. If the plaintiff is the trustee or a debtor in possession, and there are no liquid funds in the estate, the filing fee may be deferred until there are funds in the estate. (In the event no funds are ever recovered for the estate, there will be no fee). There is no fee for adding a party after the adversary proceeding has been commenced.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the right of the last line of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is *pro se*, that is, not represented by an attorney, the plaintiff must sign.

The name of the signatory must be printed in the box to the left of the signature. The date of the signing must be indicated in the box on the far left of the last line.

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF VIRGINIA

| | | |
|---|---|---|
| *In re* **AMANDA ALEXX GIOVANNI,** | ) | |
| **Debtor** | ) | **Case No. 03-14006** |
| | ) | **(Judge Mitchell)** |
| **GRAYSON, KUBLI & HOFFMAN, P.C.,** | ) | |
| **Plaintiff** | ) | **Chapter 7** |
| | ) | |
| **v.** | ) | **CM No. _____** |
| | ) | |
| **AMANDA ALEXX GIOVANNI,** | ) | |
| **Defendant** | ) | |

## CREDITOR'S COMPLAINT TO DETERMINE DISCHARGEABILITY

Plaintiff Grayson, Kubli and Hoffman, P.C. ("Grayson"), by counsel and pursuant to

11 U.S.C. § 523(a)(2)(A) & (B) & 12 (2000), Fed. R. Civ. P. 3, FRBP 5005, 7001(6) &

7003, and the Local Bankruptcy Rules files this Complaint to Determine Dischargeability of

Debt and states that the amount of $769,125.55, with interest to accrue on the unpaid balance

at the rate of 1.5% per month, which was awarded to Grayson and against Giovanni by the

American Arbitration Association ("AAA"), may not be discharged in bankruptcy.

## PARTIES, JURISDICTION AND VENUE

1.      Defendant Amanda Alexx Giovanni ("Giovanni") is a resident of Virginia, and

a debtor pursuant to 11 U.S.C. § 101(13).

2.      Grayson is Virginia professional corporation with offices at 1420 Spring Hill

Road, Suite 230, McLean, Virginia 22102.  Grayson provides professional legal services.

Grayson is a creditor as defined in 11 U.S.C. § 101(10)(A).

3.      This Court has jurisdiction pursuant to 28 U.S.C. § 1334 (2000).  Giovanni

filed Case No. 03-14006, pursuant to Chapter 13 of the Bankruptcy Code, on August 27, 2003 in the Alexandria Division of the United States Bankruptcy Court for the Eastern District of Virginia. On November 12, 2003, Giovanni converted her Chapter 13 case to Chapter 7.

4.    Venue in this Court is proper in accordance with FRBP 5005 ("complaints . . . shall be filed with the clerk in the district where the case under the Code is pending") and 7003.

## FACTS

5.    On August 18, 2003, the AAA issued a binding arbitration award ("Award") in favor of Grayson and against Giovanni in the amount of $769,125.55, with post-judgment interest to accrue at the rate of 1.5% per month. The AAA also issued Findings of Fact and Conclusions of Law. The AAA awarded Grayson "Compensatory damages in the principal sum of Four Hundred Seventeen Thousand Dollars Forty Nine Dollars and Seventy Cents ($417,049.70) under each of Counts I - V (and in the aggregate)." (Counts IV and V were fraud counts). Findings of Fact and Conclusions of Law ("Findings") ¶¶ 35-36. The AAA also ruled that "an Award of attorneys' fees incurred in this collection proceeding is hereby entered, in favor of Grayson and against Giovanni in the amount of One Hundred Seventy Five Thousand Dollars ($175,000)." Award ¶ 3. The AAA stated that an "Award of prejudgment interest is hereby entered, in favor of Grayson and against Giovanni, in the amount of $77,075.85, calculated at the rate of one and one half percent (1.5%) per month

through July 31, 2003.  Interest shall continue to accrue at 1.5% per month from August 1, 2003 until this Award is issued." *Id.* ¶ 4.  Finally, the Award provides that "[p]ursuant to the underlying Retainer Agreement, post-judgment interest shall accrue at the rate of one and one half percent (1.5%) per month from August 1, 2003 until this Award has been paid in full." *Id.* ¶ 5.

6.      Copies of the Award and the Findings are attached and are incorporated herein. (Exs. 1 & 2).[1]

7.      The AAA made the following findings which, among other things, render the Award nondischargeable:

8.      "Before Grayson agreed to represent her, Ms. Giovanni made numerous misrepresentations to Grayson to induce the representation.  For instance, regarding her ability to pay Grayson, Ms. Giovanni represented that: A. She made over $300,000 per year in professional income; B. She had already set aside $150,000 in cash to pay for Grayson's fees and expenses; C. It was well within her means, based on her existing income, to pay Grayson's monthly invoices; and D. Her hourly rate for her own work was higher than that

---

[1]  The Circuit Court of Fairfax County, Virginia ordered the arbitration in response to a motion by Giovanni.  Giovanni was represented by counsel during the arbitration. Giovanni's counsel submitted prehearing and post hearing briefs with the arbitrator, filed numerous exhibits, cross examined Grayson's witnesses, and presented witnesses on behalf of Giovanni.  The governing Virginia statutes required that Giovanni request that the Fairfax Court vacate or modify the Award no later that 90 days from delivery of a copy of the Award to Giovanni.  VA. CODE ANN. §§ 8.01-581.08 & 8.01-581.010 (2000).  Giovanni has not applied to the Fairfax Court to vacate or modify the Award.

of anyone working for Grayson."  Findings ¶ 16.

9.     "Ms. Giovanni's representations regarding her ability to pay Grayson were not true."  *Id.* ¶ 17.

10.     "Ms. Giovanni also made misrepresentations to Grayson regarding the Andrulis allegations.  For instance, Ms. Giovanni told Grayson that: A. The allegations relating to the fraud she had allegedly committed against Andrulis were all untrue; B. Keith Francis of 360 had received all of the referral fees paid by Andrulis; and C. She had received none of the referral fees, and had done nothing else improper."  *Id.* ¶ 18.

11.     "Ms. Giovanni's representations regarding 360 and Mr. Francis were not true, as Ms. Giovanni admitted to Grayson in May 2002."  *Id.* ¶ 19.

12.     "In fact, Ms. Giovanni admitted at trial in the State Case, while under oath, that she had lied to Grayson regarding the 360 allegations."  *Id.* ¶ 20.

13.     "On May 15, 2002, Grayson told Ms. Giovanni that Grayson would withdraw from its representation if Ms. Giovanni did not pay her bill immediately."  *Id.* ¶ 21.

14.     "Ms. Giovanni responded to Grayson on May 16, 2002.  She sent out a detailed plan supposedly to pay Grayson.  This included the refinancing of five of her supposed properties - Townes of Manchester Park, The Fountains Nos. 1517, 718, and 616, and Alexandria Knolls #1001 - refinancing that Ms. Giovanni represented was 'pretty far along.'"  *Id.* ¶ 22.

15.     "Ms. Giovanni reiterated that she was able to pay Grayson.  Tr. 101:8-103: 1

(Grayson 5/19/03) ('she told Victor that she was going to pay, and that she couldn't do it by May 17th, but she had the money and she was going to pay.').  In reality, Ms. Giovanni could not have been refinancing three of the properties, because she did not even *own* those properties."  *See* CX 172 [Tax Record Printouts] (showing that Giovanni does not own and has not owned The Fountains Nos. 718 and 616, nor Alexandria Knolls #1001); Tr. 104:18-105:4 (Grayson 5/19/03); May 22 Tr. 177:8-18 (Nightlinger 5/22/03) (Giovanni never purchased three of the properties that she claimed she was 'refinancing').  The other elements of Ms. Giovanni's plan were similarly without basis, and Ms. Giovanni never made any other payments to Grayson.  Tr. 95:8-96:3, 99:18-101:6, 236:8-18, 243:3-6 (Grayson 5/19/03)."  *Id*. ¶ 23.

16.     "At the trial of the State case, Ms. Giovanni admitted that she had lied about her intentions to pay Grayson."  *Id*. ¶ 24.

17.     "At the same time, Ms. Giovanni came up with an entirely new story about her receipt of the 360 referral fees.  She informed Grayson that 360 was a ruse to allow Andrulis to funnel money to Giovanni so that Giovanni could arrange for training of Andrulis employees.  Giovanni further claimed to have used $20,000 of her own money for the training on top of the 360 monies she funneled to herself.  Tr. at 429: 15-430:8 (Kubli 5/20/03); Tr. At 667:6-668:7 (Scher 5/21/03); May 22 Tr. at 68:7-70:9 (McMillan).  This too turned out to be false.  Ex. 193 [08/14/02 Fax from New Horizons]; 5/22 Tr. at 62:16-64:14 (McMillan)."  *Id*. ¶ 25.

18.     "Under Virginia law, a fact is material when 'it influences a person to enter into a contract, when it deceives him or induces him to act, or when without it the transaction would not have occurred.' *Spence*, 236 Va. at 28, quoting *Packard Norfolk v. Miller*, 198 Va. 557, 563 (1956)." *Id*. ¶ 26.

19.     "Ms. Giovanni's initial representations, regarding the 360 allegations and her ability to pay, influenced Grayson to accept representation of Ms. Giovanni." *Id*. ¶ 27.

20.     "Ms. Giovanni's additional misrepresentations in response to Grayson's stated intention to withdraw if she did not pay the fees caused Grayson to continue working for Ms. Giovanni, and not to move to withdraw sooner." *Id*. ¶ 28.

21.     "Ms. Giovanni's misrepresentations were material, because they induced Grayson to act, in taking on the representation, and not to act, in not withdrawing from the representation sooner. See *Ware*, 220 Va. at 230 ('An action for fraudulent inducement need not, however, be limited to formation of the contract. Although formation was free of fraud, *performance* of an executory contract may be fraudulently induced.') (emphasis in original), citing *Horner v. Ahern*, 207 Va. 860 (1967)." *Id*. ¶ 29.

22.     "Grayson relied on Ms. Giovanni's representations. Grayson would not have agreed to represent Ms. Giovanni, or continued to represent her, but for those representations." *Id*. 30.

23.     "Ms. Giovanni made her misrepresentations with the intention to mislead Grayson. Ms. Giovanni knew that she was lying to Grayson regarding 360, and expressly

admitted this to both Grayson and the Court. CX 152 at 882-83, 915-919; *see also* ¶¶ 17-20, *supra*. Ms. Giovanni also knew the true state of her finances, *e.g.*, that she had not purchased and did not own three of the properties she stated she was refinancing in order to pay Grayson. The only conceivable purpose of these misrepresentations was to induce Grayson to represent her, and to continue to represent her. *See, e.g.*, Tr. 99:14-103:1, 160:6-161:8, 238:16-239:22 (Grayson 5/19/03)." *Id*. ¶ 31.

24.     "But for Ms. Giovanni's numerous misrepresentations, Grayson would not have represented Ms. Giovanni in the first place, and would not have continued to represent her after May 15, 2002." *Id*. ¶ 32

25.     "Grayson has been damaged in the amount of the unpaid fees and expenses (as well as the lost opportunity costs of other representation that Grayson could not undertake because of the demands on the firm's lawyers from representing Ms. Giovanni). The total of unpaid fees is $417,049.70." *Id*. ¶ 33.

26.     "The evidence also shows that Ms. Giovanni, in making her numerous intentional misrepresentations described above, acted with malice or willful and wanton disregard for Grayson's rights. Under Virginia law it its appropriate to punish Ms. Giovanni for her actions, and to deter others from doing the same thing, by imposing punitive damages on Ms. Giovanni, in favor of Grayson." *Id*. ¶ 34.

27.     "Much of Grayson's work was made necessary by "wild goose chases" instigated by Ms. Giovanni." *Id.* ¶ 12.

28.     During the arbitration before the AAA, Giovanni was represented by an attorney.

29.     Giovanni's attorney submitted briefs setting forth Giovanni's arguments to the AAA.

30.     Giovanni's attorney presented witnesses who testified on behalf of Giovanni.

31.     Giovanni's attorney cross examined Grayson's witnesses.

32.     Giovanni had the opportunity to testify and refute Grayson's allegations that Giovanni made the misrepresentations set forth above.

33.     Giovanni chose not to testify at the arbitration conducted by the AAA.

34.     The AAA's Award and Findings have res judicata and collateral estoppel effects and, as a result, Giovanni's debt to Grayson may not be discharged in bankruptcy.

## COUNTS

### Count I

**Giovanni's Debt is Not Dischargeable Pursuant to 11 U.S.C. § 523(a)(2)(A) (False Representation Other Than a Statement Respecting Financial Condition)**

35.     Grayson incorporates the allegations of paragraphs 1-34 above as if fully set forth herein.

36.     Giovanni falsely represented to Grayson that Andrulis's allegations against her were false.

37.     Giovanni falsely represented to Grayson that she intended to pay Grayson for Grayson's legal services.

38. Giovanni falsely represented to Grayson that various individuals and corporations would corroborate the allegations against Andrulis.

39. Giovanni falsely represented to Grayson that Susan Qawasmeh would corroborate Giovanni's false allegations against Andrulis.

40. Grayson served a subpoena on Qawasmeh, and required her to appear for a deposition.

41. Qawasmeh advised Grayson via letter that Giovanni asked Qawasmeh to provide false information at the deposition.

42. Giovanni falsely represented, in e-mail messages to Grayson, that she was a witness named Keith Francis ("Francis") and, as Francis, provided a false affidavit.

43. Giovanni falsely represented to Grayson that a detective representing Andrulis tried to obtain information regarding Giovanni's prescriptions from a pharmacist.

44. Giovanni falsely represented to Grayson that she purchased office furniture for Francis to compensate Francis for Giovanni's retention of payments from Andrulis that were due Francis.

45. Giovanni falsely represented to Grayson that a furniture store had documents that would corroborate her representation that she purchased office furniture for Francis.

46. Giovanni's false representations induced Grayson to issue a subpoena for the documents.

47. Giovanni falsely told the manager of the furniture store that the furniture store

was not required to produce documents in response to Grayson's subpoena.

48. Giovanni falsely represented to Grayson that an attorney went to the furniture store and destroyed the documents that were responsive to Grayson's subpoena.

49. Giovanni falsely represented to Grayson that an attorney, a U.S. Internal Revenue Service ("IRS") contracting officer, and Andrulis employees participated in the submission of false claims to the IRS.

50. Giovanni falsely represented to Grayson that an attorney instructed her to lie in a deposition in order to conceal Andrulis's submission of false claims to the IRS, and to conceal the attorney's own involvement in the submission of false claims.

51. Giovanni sent an e-mail to John Nesbitt ("Nesbitt"), and requested that Nesbitt pose as Francis in order to collect the amounts of fraudulent invoices that Giovanni had sent to Andrulis.

52. Nesbitt testified that Giovanni asked him to pose as Francis. (Ex. 3).

53. Giovanni admitted that she paid Nesbitt $10,000 to provide false deposition testimony.

54. Giovanni falsely represented to Grayson that Andrulis posted numerous copies of a subpoena in chancery in the apartment building where Giovanni lived.

55. Giovanni falsely represented to Grayson that Teresa Muñoz ("Muñoz") saw and collected numerous copies of the subpoena in chancery that were posted in Giovanni's apartment building.

56. Muñoz gave Grayson an affidavit stating that she saw and collected copies of the subpoena in chancery at Giovanni's apartment building.

57. Grayson sent a subpoena to Muñoz requiring her to appear as a witness at Giovanni's trial.

58. At trial, Muñoz advised Grayson that the affidavit that she gave Grayson was false, and that she could not corroborate Giovanni's allegations at trial.

59. Muñoz told Grayson that Giovanni induced her to provide the false affidavit to Grayson.

60. Giovanni falsely represented to Grayson that she would not oppose Grayson's motion to withdraw from its representation of her in the litigation against Andrulis.

61. Giovanni then sent an *ex parte* letter to the court, and falsely alleged, *inter alia*, that Grayson improperly billed her for services performed in another case.

62. Giovanni admitted in the trial against Andrulis that her allegations that Grayson improperly billed her for services performed in another case were false.

63. Giovanni's misrepresentations listed above, among others, were part of the record reviewed by the AAA before making the Award to Grayson. Giovanni made the false representations set forth above, and other false representations.

64. The AAA found that Giovanni "made misrepresentations to Grayson regarding the Andrulis allegations."

65. Giovanni knew that her false representations to Grayson were false when she

made the representations.

66.    The AAA found that "Giovanni knew that she was lying to Grayson . . . and expressly admitted this to both Grayson and the Court."

67.    Giovanni made her false representations with the intention and purpose of deceiving Grayson.

68.    The AAA found that "Giovanni made her misrepresentations with the intention to mislead Grayson."

69.    Giovanni admitted in court that she lied to Grayson when she represented to Grayson that she would pay for Grayson's legal services.

70.    The AAA found that the "only purpose of [Giovanni's] misrepresentations was to induce Grayson to represent her."  The AAA also found that "Ms. Giovanni made her representations with the intention to mislead Grayson."

71.    Grayson relied upon Giovanni's false representations in deciding to represent Giovanni and to continue to represent Giovanni.

72.    The AAA found that "[b]ut for Ms. Giovanni's numerous misrepresentations, Grayson would not have represented Ms. Giovanni in the first place, and would not have continued to represent her after May 15, 2002."  The AAA also found that "Grayson relied on Ms. Giovanni's representations.  Grayson would not have agreed to represent Ms. Giovanni, or continued to represent her, but for those representations."

73.    Grayson would not have agreed to represent Giovanni if it had known that

Andrulis's allegations of fraud against Giovanni were true.

74.     Grayson would have moved to withdraw early in the litigation, after Andrulis offered to settle the case for the amount that Giovanni obtained by fraud, if Grayson had known that Andrulis's fraud allegations were true.

75.     Grayson sustained loss and damage as a result of Giovanni's false representations.

76.     The AAA found that Grayson sustained loss and damage as a result of Giovanni's false representations, and awarded Grayson compensatory and punitive damages for fraud, attorneys' fees and interest.

77.     Giovanni's false representations caused Grayson to perform numerous additional hours of legal work in order to investigate Giovanni's false allegations and to interview and depose individuals and entities that Giovanni alleged would corroborate her false representations.

78.     Giovanni obtained legal services from Grayson by means of her false representations.

79.     Except for a payment of $10,000, Giovanni did not pay Grayson for the legal services that Grayson provided.

80.     Giovanni owes Grayson a debt in the amount of $769,125.55, with interest to accrue on the unpaid balance at the rate of 1.5% per month, awarded by the AAA.

81.     Pursuant to 11 U.S.C. § 523(a)(2)(A), Giovanni's debt may not be discharged

in a Chapter 7 proceeding.

## COUNT II

**Giovanni's Debt is Not Dischargeable Pursuant to 11 U.S.C. 523(a)(2)(B) (Use of a False Written Statement Respecting Debtor's Financial Condition)**

82.     Grayson incorporates the allegations of paragraphs 1-81 above as if fully set forth herein.

83.     Giovanni provided Grayson with a statement in writing respecting Giovanni's financial condition.

84.     Giovanni's statement was materially false.

85.     Giovanni statement was a statement respecting Giovanni's financial condition.

86.     Giovanni provided Grayson with the materially false statement respecting her financial condition with the intent to deceive Grayson.

87.     Grayson relied upon Giovanni's statement, and continued to provide legal services to Giovanni.

88.     Except for a payment of $10,000, Giovanni did not pay Grayson for the legal services that Grayson performed in reliance upon Giovanni's false statement.

89.     Giovanni owes Grayson a debt for legal services that it performed in reliance upon Giovanni's materially false statement respecting her financial condition in the amount of $769,125.55, with interest to accrue on the unpaid balance at the rate of 1.5% per month, awarded by the AAA.

90.     Pursuant to 11 U.S.C. 523(a)(2)(B), Giovanni's debt to Grayson may not be discharged in a Chapter 7 proceeding.

## COUNT III

**Giovanni's Debt Is Not Dischargeable Pursuant to 11 U.S.C. § 523(a)(6) (Giovanni Willfully and Maliciously Injured Grayson)**

91.     Grayson incorporates the allegations of paragraphs 1-90 above as if fully set forth herein.

92.     The AAA found that Giovanni made numerous false representations to Grayson.

93.     The AAA found that Giovanni made her false representations in order to induce Grayson to represent her in litigation against Andrulis, and to continue that representation.

94.     The AAA found that Grayson sustained damages as a result of Giovanni's false representations.

95.     The AAA found that "Ms. Giovanni, in making her numerous intentional misrepresentations . . . acted with malice or willful and wanton disregard for Grayson's rights."

96.     Giovanni inflicted willful and malicious injury upon Grayson.

97.     Giovanni had a full and fair opportunity to litigate all of the issues in this litigation in the arbitration before the AAA.

98.     Giovanni has not paid Grayson for legal services provided in reliance upon Giovanni's materially false statements.

99.     Giovanni made the false statements that induced Grayson to perform legal

services willfully and maliciously.

100.     Giovanni has willfully and maliciously injured Grayson in the amount determined by the AAA.

101.     Giovanni owes Grayson a debt for willfully and maliciously injuring Grayson in the amount of $769,125.55, with interest to accrue on the unpaid balance at the rate of 1.5% per month.

102.     Pursuant to 11 U.S.C. § 523(a)(6), Giovanni's debt to Grayson may not be discharged in a Chapter 7 proceeding.

<strong>PRAYER FOR RELIEF</strong>

**WHEREFORE** Grayson respectfully requests that, pursuant to 11 U.S.C. § 523(a)(2) and (6), this Court declare that Giovanni's debt to Grayson may not be discharged in bankruptcy.

Respectfully submitted,

PAPERMASTER & WELTMAN, P.C.

By:/s/Gary F. Weltmann
Gary F. Weltmann, Esquire
VA Bar No. 33861
30 West Gude Drive, Suite 450
Rockville, Maryland 20850
Phone (301) 279-0303
Local Counsel for Creditor

GRAYSON, KUBLI & HOFFMAN, P.C.


By: /s/James A. McMillan
James A. McMillan, Esq.
VA Bar No. 35597
GRAYSON, KUBLI & HOFFMAN, P.C.
1420 Spring Hill Road, Suite 230
McLean, Virginia 22102
Phone (703) 749-0000
Counsel for Creditor


SCHUMACK RYALS PLLC


By: /s/Daniel Schumack
Daniel Schumack
VA Bar No. 28729
3900 Jermantown Road, Suite 300
Fairfax, Virginia 22030
Counsel for Creditor

| | |
|---|---|
| GRAYSON, KUBLI & HOFFMAN, P.C., | ) |
| | ) |
| Claimant, | ) |
| | ) |
| and | )     Case No. 16 181 00028 03 |
| | ) |
| A. ALEXX GIOVANNI, | ) |
| a/k/a AMANDA ALEXX GIOVANNI | ) |
| and additional aliases and alter egos | ) |
| included at Appendix A, | ) |
| | ) |
| Respondent. | ) |

## ARBITRATION AWARD

I, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the Arbitration Agreement entered into by the above-named parties, and dated December 19, 2001, and having been sworn and having heard the proofs and allegations of the parties, and A. Alexx Giovanni having withdrawn her counterclaim with respect to Grayson, Kubli & Hoffman, P.C. at the hearing, hereby AWARD, as follows:

1.     Grayson has proven each contract based claim (Counts I-III) by a preponderance of the evidence and each fraud claim (Counts IV and V) by clear and convincing evidence. A compensatory Award is hereby entered, in favor of Grayson and against Giovanni, in the principal sum of $417,049.70 under each such claim (and in the aggregate);

2.     Pursuant to Virginia law, because Grayson has proven each fraud-based claim (Counts IV and V) by clear and convincing evidence, an Award of punitive damages is hereby entered, in favor of Grayson and against Giovanni, in the amount of One Hundred Thousand Dollars ($100,000) under each such claim (and in the aggregate):

3.     Pursuant to the underlying Retainer Agreement, an Award of attorneys' fees incurred in this collection proceeding is hereby entered, in favor of Grayson and against Giovanni, in the amount of One Hundred Seventy Five Thousand Dollars ($175,000);

4.     Pursuant to the underlying Retainer Agreement, an Award of pre-judgment interest is hereby entered, in favor of Grayson and against Giovanni, in the amount of $77,075.85, calculated at the rate of one and one half percent (1.5%) per month through July 31, 2003. Interest shall continue to accrue at 1.5% per month from August 1, 2003 until this Award is issued;

5.     Pursuant to the underlying Retainer Agreement, post-judgment interest shall accrue at the rate of one and one half percent (1.5%) per month until this Award has been paid in full;

6.     Pursuant to the Supplementary Procedures for Consumer-Related Disputes, effective March 1, 2002, (the "Procedures"), which were in effect at the time this matter was filed with the American Arbitration Association, no Award of the administrative costs of this arbitration is permitted to be made against Giovanni;

7.     The Awards granted herein are entered against Giovanni, including all of the aliases and alter egos indicated on Appendix A, which is attached hereto. Counsel for Claimant shall seek an appropriate protective order[1] from any Court in which Claimant shall seek to enforce this Award. Counsel for Respondent shall cooperate in obtaining such protective order for the benefit of Respondent; and

8.     The related Findings of Fact and Conclusions of Law that the Arbitrator has issued on this date are incorporated herein.

With regard to the expenses of Arbitration, RESPONDENT shall pay the maximum amount the governing rules allow. CLAIMANT will pay the remaining amount. The administrative fees and expenses of the American Arbitration Association ("the Association") totaling FIVE THOUSAND FIVE HUNDRED DOLLARS AND NO CENTS ($5,500.00) shall be borne, as incurred, by CLAIMANT, and the compensation and expenses of the arbitrator(s) totaling FIFTEEN THOUSAND SEVEN HUNDRED THIRTY-FOUR DOLLARS AND NO CENTS ($15,734.00), of which THREE HUNDRED SEVENTY-FIVE DOLLARS AND NO CENTS ($375.00) shall be borne by RESPONDENT and the remaining FIFTEEN THOUSAND THREE HUNDRED FIFTY-NINE DOLLARS AND NO CENTS ($15,359.00) shall be borne by CLAIMANT. CLAIMANT shall pay to the Association the sum of THREE THOUSAND THREE HUNDRED EIGHTY-FOUR DOLLARS AND NO CENTS ($3,384.00), representing amounts still due the Association. These amounts reflect all payments made to date.

The above sums are to be paid on or before thirty (30) days from the date of this Award.

This Award is in full settlement of all claims and counterclaims submitted to this Arbitration. All claims not expressly granted herein are hereby, denied.

This Award may be executed in any number of counterparts, each of which shall be deemed an original, and all of which shall constitute together one and the same instrument.

August 18, 2003

_August 18, 2003_

Caryl S. Bernstein

Caryl S. Bernstein

---

[1] Such protective order shall make certain that Respondent's current name and her previous name do not appear together in any document or other place in which members of the public may be able to see them.

# AMERICAN ARBITRATION ASSOCIATION

| | |
|---|---|
| GRAYSON, KUBLI & HOFFMAN, P.C. **CLAIMANT** | |
| v. | Case No. 16 181 00028 03 |
| A. ALEXX GIOVANNI AKA AMANDA ALEXX GIOVANNI AND ADDITIONAL ALIASES AND ALTER EGOS LISTED BELOW **RESPONDENT** | |

## APPENDIX A

The Arbitration Award is granted against RESPONDENT A. ALEXX GIOVANNI and the following aliases and alter egos which the evidence has established are used by the Respondent:

| | |
|---|---|
| | ALIMENTUM INTERNATIONAL, INC. |
| | ALIMENTUM INTERNATIONAL |
| | ENTERPRISES |
| | INC. |
| ALEXX GIOVANNI | DESIGNICA |
| A.A. GIOVANNI | DESIGNICA, INC. |
| AMANDA A. GIOVANNI | COMPUTER TUTOR |
| AMANDA ALEXX GIOVANNI | COMPUTER TUTORS |
| AMANDA GIOVANNI | THE COMPUTER TUTOR |
| | GIO ASSURE |
| | LACE EMPIRE |
| | SITTO ENTERPRISES |
| | SITTO SECURITY SYSTEMS |
| | SITTU ENTERPRISES |

AMERICAN ARBITRATION ASSOCIATION

GRAYSON, KUBLI & HOFFMAN, P.C.,  )
                                 )
        Claimant,                )
                                 )
    and                          )        Case No. 16 181 00028 03
                                 )
A. ALEXX GIOVANNI,               )
a/k/a AMANDA ALEXX GIOVANNI      )
and additional aliases and alter egos )
included at Appendix A,          )
                                 )
        Respondent.              )

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This matter came before the Arbitrator for hearing on the Statement of Claim of

Grayson, Kubli & Hoffman, P.C. ("Grayson"). Hearings were held on May 19-23, 2003 and

on June 5, 2003. Claimant Grayson was represented by Daniel Schumack, Esq. of Fairfax,

Virginia. Respondent Giovanni was represented by Theodore Allison of Washington, D.C.

Based upon the testimony,[1] exhibits, and the pre- and post-hearing briefs of the Parties, the

Arbitrator finds as follows:

## I.    BREACH OF CONTRACT

1.    Grayson and Respondent A. Alexx Giovanni ("Ms. Giovanni") entered into

---

[1] Grayson presented five witnesses: four attorneys who worked on Ms. Giovanni's case and
an expert witness, Bernard J. DiMuro, Esq. Ms. Giovanni presented three witnesses: an
expert witness, Warner Young, Esq., and two fact witnesses who had no knowledge of the
relationship between Grayson and Ms. Giovanni. Notably, Ms. Giovanni failed to testify in
her own defense. As is appropriate under Virginia law, the Arbitrator has inferred that had
she testified, Ms. Giovanni's testimony would have been adverse to her interests. *See, e.g.,
Banks v. Harris*, 238 Va. 81, 83, 380 S.E.2d 634, 635 (1989), *Neeley v. Johnson*, 215
*Va.565, 211 S.E.2d 100 (1975)*, *Piccolo v. Woodford*, 184 Va. 432, 35 S.E.2d 393 (1945).

two valid and binding contracts, *i.e.*, the retainer agreements between Grayson and Ms. Giovanni governing respectively, the suit against Ms. Giovanni by her former employer, Andrulis Corp. ("Andrulis"), and a related *Qui Tam* case. It is the former agreement (the "Retainer Agreement") that is relevant to the dispute that is the subject of this arbitration. Claimant's Exhibit ("CX") 1.

2.      Pursuant to the Retainer Agreement, Ms. Giovanni agreed to pay Grayson its hourly fees, plus expenses, in connection with Grayson's representation of Ms. Giovanni in a lawsuit brought by Andrulis in the Circuit Court for the City of Alexandria (the "State Case"). *Id.* The parties entered into the Retainer Agreement orally on December 4, 2001. Transcript ("Tr.") 50:8-56:14, 60:8-61:20 (Grayson 5/19/03). Two weeks later, on December 19, 2001, Grayson sent Ms. Giovanni the written agreements. Ms. Giovanni signed the Retainer Agreement on March 22, 2001, writing some proposed changes that affected only the terms of the retainer agreement relating to the *Qui Tam* case. CX 1.

3.      In the State Case, Andrulis alleged, *inter alia*, that Ms. Giovanni had committed fraud against Andrulis by, among other things:

A.      Claiming that an employment agency known as "360" or "The Computer Tutor" (collectively, "360") referred employees that Andrulis hired;

B.      Representing to Andrulis that 360 was owned and operated by an individual named Keith Francis; and

C.      Keeping for herself the referral commissions that Andrulis paid to 360.

CX 4.

4.      Before Grayson and Ms. Giovanni entered into the Retainer Agreement orally, Mr. Grayson informed Ms. Giovanni of Grayson's hourly rates, and of Grayson's billing practices in general. He told Ms. Giovanni that defense of the State Case was likely to cost $25,000 or more per month in the pre-trial period and that the trial would likely cost $100,000. Ms. Giovanni therefore understood the basis of Grayson's fees when she agreed to pay them. Tr. 54:2- 57:2, 63:20-66:6, 238:16-239:7 (Grayson 5/19/03), Tr.424:12-425:21, 426:19-427:9 (Kubli 5/20/03).

5.      Ms. Giovanni paid Grayson the $10,000 retainer required by the Retainer Agreement. CX 2; CX 84; Tr. 94:21-95:3 (Grayson 5/19/03).

6.      Grayson sent Ms. Giovanni monthly invoices, which reflected the work that Grayson had performed on Ms. Giovanni's behalf in the State Case. CX 2; Tr. 66:10-68:21 (Grayson 5/19/03).

7.      Ms. Giovanni did not pay Grayson any amounts beyond the $10,000 retainer, although the Retainer Agreement required payment within 30 days of her receipt of a bill. CX 1., Tr. 95:8-96:3, 99:18-101:6, 243:3-6 (Grayson 5/19/03).

8.      The unpaid balance of fees and expenses charged to Ms. Giovanni is

$417,049.70.[2]

9.  By not paying Grayson, Ms. Giovanni breached her contract with Grayson.

10.  Under Virginia law, attorneys' fees must be reasonable. *See, e.g., Mullins v. Richlands Nat'l Bank*, 241 Va. 447, 403 S.E.2d 334 (1991) (identifying factors to be considered in determining the reasonableness of a fee); *see also, Seyfarth Shaw, Fairweather & Geraldson v. Lake Fairfax Seven L.P.*, 253 Va. 93, 480 S.E.2d 471 (1997) (retainer agreement is prima facie evidence of a reasonable fee). The attorney's hourly rates must be reasonable.

11.  Ms. Giovanni's reference to the Virginia Rules of Professional Conduct in challenging Grayson's fees is misplaced. The Virginia Rules of Professional Conduct do not create a private right of action. VA. RULE OF PROFESSIONAL CONDUCT, Preamble ¶ 19. Moreover, the record in this action does not support a conclusion that the fees Grayson charged Giovanni approached a level that would violate Virginia Rule of Professional Conduct 1.5.

---

[2]  Grayson's initial arbitration demand was for $367,594.70. During preparation for the hearing in this matter, Grayson discovered a billing "glitch" that had caused Grayson to underbill Ms. Giovanni by $49,455.00. CX 205; Tr. 76:18-79:12 (Grayson 5/19/03). The Arbitrator granted Grayson leave to amend its demand to include the unbilled fees. Tr. Vol. 4, 166:10-167:3 (5/22/03).

4

12. Both Grayson's hourly rates, and the total fees and expenses that Grayson charged to Ms. Giovanni in the State Case, were reasonable. *E.g.*, Tr. 778:3-13, 831:21-832:12 (DiMuro 5/21/03) (both Grayson's hourly rates and fees were reasonable). Much of Grayson's work was made necessary by "wild goose chases" instigated by Ms. Giovanni. CX 79 (McMillan's reports of contacts with people relating to Ms. Giovanni's case); Tr. 90:1-6, 121:17-124:2, 184:11-188:14 (Grayson 5/19/03). Ms. Giovanni received monthly invoices from Grayson and never questioned their reasonableness. Tr. 61:21-62:11, 66:7-69:2 (Grayson 5/19/03); Tr. 507:16-508:15 (Kubli 5/20/03). Respondent's expert, Mr. Young, testified, *inter alia*, that he believed that Grayson's hourly rates were higher than those prevailing in the state courts in northern Virginia and he would have managed the case differently from the way Grayson did. Tr. Vol 5, 35:3-43:2, 22:7-35:2 (Young,5/23/03). However, the Arbitrator finds that it is not unreasonable to charge more than the average or usual rate in an area. Furthermore, Ms. Giovanni agreed to Grayson's rates, and much of what was done was done at her request or because of her actions.

13. Ms. Giovanni's breach of the retainer agreement has directly damaged Grayson in the amount of $417,049.70 in unpaid attorney's fees and expenses. CX 2, 3 and 205.[3] (This amount does not include Grayson's consequential damages, for which Claimant has not claimed compensation. Tr. 240:17-248:5 (Grayson 5/19/03) (among other things, Mr.

---

[3] The Arbitrator notes that the same result would be achieved under the Open Account or Unjust Enrichment claims that Grayson asserted.

Grayson had to lend the firm money and terminate the firm's pension plan, due to Ms. Giovanni's failure to pay)).

## II.    FRAUD

14.    Under Virginia law, in order to prove fraud or fraudulent inducement, a plaintiff must prove, by clear and convincing evidence: (1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with the intent to mislead, (5) relied upon by the misled party, and (6) resulting in damage. *See, e.g., Spence v. Griffin*, 236 Va. 21, 28 (1988); *J.E. Roberts Co. v. J. Robert Co.*, 231 Va. 338, 341 (1986); *Bd. of Directors of Carrdinal Place Condominium v. Carrhomes*, 58 Va. Cir. 602 (Fairfax Cty. 2000).

15.    In addition, for a plaintiff to show that it was fraudulently induced to enter into a contract, the misrepresentation must have been made prior to the formation of the contract, and must have been intended to induce the formation of the contract. *Ware v. Scott*, 220 Va. 317, 319-20 (1979). The misrepresentation may be oral or written. *Carrhomes*, 58 Va. Cir. 602.

## A.    Ms. Giovanni Made Numerous Misrepresentations to Grayson

### 1.    Ms. Giovanni Made Misrepresentations Prior to Contract Formation to Induce Grayson to Represent Her

16.    Before Grayson agreed to represent her, Ms. Giovanni made numerous misrepresentations to Grayson to induce the representation. For instance, regarding her ability to pay Grayson, Ms. Giovanni represented that:

A.    She made over $300,000 per year in professional income;

B.    She had already set aside $150,000 in cash to pay for Grayson's fees and expenses;

C.    It was well within her means, based on her existing income, to pay Grayson's monthly invoices; and

D.    Her hourly rate for her own work was higher than that of anyone working for Grayson.

CX 8 [A. Alexx Giovanni Proposed Severance Package] at 2 ("$3000 per day is my normal billable day."); Tr. 54:2-56:19, 60:8-61:2 (Grayson 5/19/03) (*inter alia*, Grayson explained the fees and expenses likely to be generated in the State Case, Ms. Giovanni reported $150,000 in cash set aside for the State Case, and Ms. Giovanni's claimed hourly rates are higher than anyone at Grayson's); Tr. 426:19-427:10 (Kubli 5/20/03) (Ms. Giovanni was going to "bury" Andrulis, her rates were higher than Grayson's); Tr. 463:15-22 (Kubli 5/20/03) (Ms. Giovanni represented that she makes $1,500/hour); Tr. 605:4-10 (Kubli 5/20/03).

17.    Ms. Giovanni's representations regarding her ability to pay Grayson were not true. *See, e.g.*, CX. 195 [2001 Giovanni Tax Return] (showing income of approximately $180,000); CX 192 [03/18/02 Burke & Herbert Bank Statements] (showing Ms. Giovanni's history of low balances and numerous overdrafts); Tr. 96:15-97:22 (Grayson 5/19/03) (bank documents show Ms. Giovanni's history of bouncing checks).

18.    Ms. Giovanni also made misrepresentations to Grayson regarding the Andrulis allegations. For instance, Ms. Giovanni told Grayson that:

A.    The allegations relating to the fraud she had allegedly committed against

7

Andrulis were all untrue;

B.     Keith Francis of 360 had received all of the referral fees paid by Andrulis; and

C.     She had received none of the referral fees, and had done nothing else improper.

CX 7 [12/05/01 Kubli Notes]; CX 9 [12/06/01 Giovanni Memorandum to Kubli]; Tr. 46:16-48:6 (Grayson 5/19/03) ("She was very explicit about this. When I talked to her she told me that none of it [the Andrulis allegations] was true."); Tr. 424:17-425:4, 425:17-426:3, 587:14-588:7 (Kubli 5/20/03); Tr. 641:2-642:11 (Scher 5/21/03); May 22 Tr. 11:20-12:2 (McMillan) (Ms. Giovanni described the 360 transaction as a normal arms-length transaction).

19.     Ms Giovanni's representations regarding 360 and Mr. Francis were not true, as Ms. Giovanni admitted to Grayson in May 2002. CX 86 [05/20/02 Scher Notes]; CX 87 [05/20/02 McMillan Notes]; Tr. 106:3-110:3 (Grayson 5/19/03); Tr. 445:14-446:2 (Kubli 5/20/03) ("Ms. Giovanni said that essentially everything she had told us about this whole Francis and transferring the money had been a lie."); Tr. 449:1-7 (Kubli 5/20/03) ("My recollection of that meeting was that she basically said, 'Everything I've told you is completely false. I'm sorry I lied to you.")

20.     In fact, Ms. Giovanni admitted at trial in the State Case, while under oath, that she had lied to Grayson regarding the 360 allegations. CX 152 [08/29/02 Trans.] at 882-83 (Ms. Giovanni lied to Grayson), 915-19 (Ms. Giovanni referred Leon Akins and Keisha Thomas), 919 (Ms. Giovanni was 360), 925 (Ms. Giovanni referred DeSomer), 928-30 (Ms.

8

Giovanni received the money paid to 360), 936-37 (Ms. Giovanni was 360), 954 (Ms. Giovanni prepared the 360 invoices); Tr. 149:19-150:8 (Grayson 5/19/03) (Ms. Giovanni lied to Grayson about Keith Francis and 360); Tr. 91:18-92:17, 156:5-157:22, 158:6-159:19, 160:2-161:8 (Grayson 5/19/03) (Ms. Giovanni was 360); Tr. 170:2-171:18 (Grayson 5/19/03) (Ms. Giovanni lied under oath during her deposition); Tr. 165:16-166:8 (Grayson 5/19/03) (Ms. Giovanni prepared the 360 invoices).

### 2. Ms. Giovanni Made Subsequent Misrepresentations to Induce Grayson to Continue to Represent Her and Postpone Termination

21.     On May 15, 2002, Grayson told Ms. Giovanni that Grayson would withdraw from its representation if Ms. Giovanni did not pay her bill immediately. CX 84 [05/15/02 letter attached to e-mail from Coleman to Giovanni].

22.     Ms. Giovanni responded to Grayson on May 16, 2002. She set out a detailed plan supposedly to pay Grayson. This included the refinancing of five of her supposed properties - Townes of Manchester Park, The Fountains Nos. 1517, 718, and 616, and Alexandria Knolls #1001 – refinancing that Ms. Giovanni represented was "pretty far along." CX 85 [05/16/02 e-mail from Giovanni to Grayson].

23.     Ms. Giovanni reiterated that she was able to pay Grayson. Tr. 101:8-103:1 (Grayson 5/19/03) ("she told Victor that she was going to pay, and that she couldn't do it by May 17th, but she had the money and she was going to pay."). In reality, Ms. Giovanni could not have been refinancing three of the properties, because she did not even *own* those

9

properties. *See* CX 172 [Tax Record Printouts] (showing that Giovanni does not own and has not owned The Fountains Nos. 718 and 616, nor Alexandria Knolls #1001);[4] Tr. 104:18-105:4 (Grayson 5/19/03); May 22 Tr. 177:8-18 (Nightlinger 5/22/03) (Giovanni never purchased three of the properties she claimed she was "refinancing"). The other elements of Ms. Giovanni's plan were similarly without basis, and Ms. Giovanni never made any other payments to Grayson. Tr. 95:8-96:3, 99:18-101:6, 236:8-18, 243:3-6 (Grayson 5/19/03).

24.    At trial of the State Case, Ms. Giovanni admitted that she had lied about her intentions to pay Grayson. CX 152 at 882; Tr. 493:20-494:14 (Kubli 5/20/03).

25.    At the same time, Ms. Giovanni came up with an entirely new story about her receipt of the 360 referral fees. She informed Grayson that 360 was a ruse to allow Andrulis to funnel money to Giovanni so that Giovanni could arrange for training of Andrulis employees. Giovanni further claimed to have used $20,000 of her own money for the training, on top of the 360 monies she funneled to herself. Tr. at 429:15-430:8 (Kubli 5/20/03); Tr. at 667:6-668:7 (Scher 5/21/03); May 22 Tr. at 68:7-70:9 (McMillan). This too turned out to false. Ex. 193 [08/14/02 Fax from New Horizons]; 5/22 Tr. at 62:16-64:14 (McMillan).

B.    **Ms. Giovanni's Misrepresentations Were Material**

---

[4] In her same e-mail, Giovanni promised to pay certain amounts of her monthly income and bonuses over to Grayson. *Id.* Giovanni presented no evidence that she ever had such income to pay to Grayson. Additionally, Giovanni never paid any of these amounts to Grayson. Tr. 105:6-106:2 (Grayson 5/19/03).

26.     Under Virginia law, a fact is material when "it influences a person to enter into a contract, when it deceives him or induces him to act, or when without it the transaction would not have occurred." *Spence*, 236 Va. at 28, quoting *Packard Norfolk v. Miller*, 198 Va. 557, 563 (1956).

27.     Ms. Giovanni's initial representations, regarding the 360 allegations and her ability to pay, influenced Grayson to accept representation of Ms. Giovanni. Tr. 238:16-239:7 (Grayson 5/19/03).

28.     Ms. Giovanni's additional misrepresentations in response to Grayson's stated intention to withdraw if she did not pay the fees caused Grayson to continue working for Ms. Giovanni, and not to move to withdraw sooner.   CX 88; Tr. 238:16-239:20 (Grayson 5/19/03).

29.     Ms. Giovanni's misrepresentations were material, because they induced Grayson to act, in taking on the representation, and not to act, in not withdrawing from the representation sooner . *See Ware*, 220 Va. at 320 ("An action for fraudulent inducement need not, however, be limited to formation of the contract. Although formation was free of fraud, *performance* of an executory contract may be fraudulently induced.") (emphasis in original), citing *Horner v. Ahern*, 207 Va. 860 (1967).

## C.     Grayson Relied on Ms. Giovanni's Misrepresentations

30.     Grayson relied on Ms. Giovanni's representations.  Grayson would not have agreed to represent Ms. Giovanni, or continued to represent her, but for those representations.

Tr. 114:16-115:3, 160:6-161:8, 164:19-165:8, 238:16-239:20 (Grayson 5/19/03) ("Q. Who

has the decision-making authority in your law firm to accept or reject a law suit? A. I do. Q.

You made the decision to take the [State] case? A. Based on the representations that Ms.

Giovanni made to us, yes. . . . If [Ms. Giovanni] had been honest with us on May 20th when I

spoke to her, and she told us directly what the real state of affairs was with regard to the case

and with regard to her financial status, then we wouldn't have continued after that point

either."); Tr. 433:18-434:13 (Kubli 5/20/03).

**D.      Ms. Giovanni's Misrepresentations Were Intentional and Misleading**

31.      Ms. Giovanni made her misrepresentations with the intention to mislead

Grayson. Ms. Giovanni knew that she was lying to Grayson regarding 360, and expressly

admitted this to both Grayson and the Court. CX 152 at 882-83, 915-919; *see also* ¶¶ 17-20,

*supra.* Ms. Giovanni also knew the true state of her finances, *e.g.*, that she had not purchased

and did not own three of the properties she stated she was refinancing in order to pay

Grayson. The only conceivable purpose of these misrepresentations was to induce Grayson

to represent her, and to continue to represent her. *See, e.g.*, Tr. 99:14-103:1, 160:6-161:8,

238:16-239:22 (Grayson 5/19/03).

**E.      Grayson Has Been Damaged by Ms. Giovanni's Misrepresentations**

32.      But for Ms. Giovanni's numerous misrepresentations, Grayson would not have

represented Ms. Giovanni in the first place, and would not have continued to represent her

after May 15, 2002. Tr. 114:16-115:3, 160:6-161:8, 164:19-165:8, 238:16-239:22 (Grayson

12

5/19/03); Tr. 433:18-434:13 (Kubli 5/20/03).

33.     Grayson has been damaged in the amount of the unpaid fees and expenses (as well as the lost opportunity costs of other representation that Grayson could not undertake because of the demands on the firm's lawyers from representing Ms. Giovanni). The total of the unpaid fees and expenses is $417,049.70. CX 2 [Invoices]; CX 205.

34.     The evidence also shows that Ms. Giovanni, in making her numerous intentional misrepresentations described above, acted with malice or willful and wanton disregard for Grayson's rights. Under Virginia law it is appropriate to punish Ms. Giovanni for her actions, and to deter others from doing the same thing, by imposing punitive damages on Ms. Giovanni, in favor of Grayson. *See, e.g., Smith v. Litten*, 256 Va. 573, 507 S.E.2d 77 (1998), *Hamilton Development Company v. Broad Rock Club, Inc.*, 248 Va. 40, 445 W.E.2d 140 (19940; *see also* VA. MODEL JURY INSTRUCTION I-9.

## III.     ATTORNEYS FEES AND INTEREST; AWARD

35.     Grayson has proven each contract based claim (Counts I-III) by a preponderance of the evidence. Grayson has proven each fraud-based claim (Counts IV-V) by clear and convincing evidence. The following Award is therefore hereby entered in favor of Grayson and against Giovanni:

36.     Compensatory damages in the principal sum of Four Hundred Seventeen Thousand Forty Nine Dollars and Seventy Cents ($417,049.70) under each of Counts I - V (and in the aggregate);

37.    Punitive damages in the amount of One Hundred Thousand Dollars ($100,000) under each of Counts IV and V (and in the aggregate);

38.    Attorneys' fees, pursuant to the underlying Retainer Agreement, in the amount of One Hundred Seventy Five Thousand ONE HUNDRED SEVENTY-FIVE THOUSAND DOLLARS AND NO CENTS ($175,000.00);[5]

39.    As shown in Appendix B, an Award of pre-judgment interest pursuant to the underlying Retainer Agreement, in the amount of Seventy Seven Thousand Seventy Five Dollars and Eighty Five Cents ($77,075.85), calculated through July 31, 2003.[6] Interest shall continue to accrue at 1.5% per month from August 1, 2003 until the date of this Award.

40.    Pursuant to the underlying Retainer Agreement, post-judgment interest shall accrue in favor of Grayson and against Giovanni, at the rate of one and one half percent (1.5%) per month until this Award has been paid in full.

41.    Pursuant to the Supplementary Procedures for Consumer-Related Disputes, effective March 1, 2002, (the "Procedures"), which were in effect at the time this matter was

---

[5] The Retainer Agreement provides for a payment of fifty percent (50%) of the unpaid fees and expenses as Attorney Fees should Grayson have to file suit to enforce its right to be paid. This would amount to $208,524.85 in this case. The Arbitrator believes that amount would be excessive for this proceeding and has, accordingly, used her equitable powers in determining this aspect of the Award.

[6] The Arbitrator has noted that Claimant's asserted interest due through July 31, 2003 has been calculated on the basis of simple interest, even though the Retainer Agreement provides for monthly compounding. See Appendix B. Accordingly, the Arbitrator has provided pre-judgment interest consistent with Claimant's calculation and post-judgment simple interest in the Agreement's amount of 1.5% per month.

14

filed with the American Arbitration Association, no Award of the administrative costs of this arbitration is permitted to be made against Giovanni.

42.     Pursuant to the Procedures, an Award for the Arbitrator's fees in the amount of Three Hundred Seventy Five Dollars ($375) is entered in favor of Grayson and against Giovanni. This is the maximum amount of the Arbitrator's fees that the Procedures permit to be awarded against Giovanni.

43.     The Awards granted herein are entered against Giovanni, inclusive of all aliases and alter egos indicated on Appendix A, which is attached hereto.

44.     These Findings of Fact and Conclusions of Law are incorporated into the Award in this matter, which is issued simultaneously.

_August 18, 2003_

_Caryl S. Bernstein_

August 18, 2003

Caryl S. Bernstein

# AMERICAN ARBITRATION ASSOCIATION

| GRAYSON, KUBLI & HOFFMAN, P.C. | |
| CLAIMANT | |
| | |
| v. | Case No. 16 181 00028 03 |
| | |
| A. ALEXX GIOVANNI | |
| AKA AMANDA ALEXX GIOVANNI | |
| AND ADDITIONAL ALIASES AND ALTER EGOS LISTED BELOW | |
| RESPONDENT | |
| | |

## APPENDIX A

The Arbitration Award is granted against RESPONDENT A. ALEXX GIOVANNI and the following aliases and alter egos which the evidence has established are used by the Respondent:

| | |
| --- | --- |
| ▪▪▪▪▪▪▪▪▪▪ | ALIMENTUM INTERNATIONAL, INC. |
| ▪▪▪▪▪▪ | ALIMENTUM INTERNATIONAL |
| | ▪▪▪▪ ENTERPRISES |
| ALEXX GIOVANNI | ▪▪▪▪ INC. |
| A.A. GIOVANNI | DESIGNICA |
| AMANDA A. GIOVANNI | DESIGNICA, INC. |
| AMANDA ALEXX GIOVANNI | COMPUTER TUTOR |
| AMANDA GIOVANNI | COMPUTER TUTORS |
| | THE COMPUTER TUTOR |
| | GIO ASSURE |
| | LACE EMPIRE |
| | SITTO ENTERPRISES |
| | SITTO SECURITY SYSTEMS |
| | SITTU ENTERPRISES |

| Invoice Date | New Invoice Amount | Payment Date | Payment Amount | Fee Balance | Interest Rate | Days | Interest |
|---|---|---|---|---|---|---|---|
| 01/30 | $7,924.03 | 01/02 | $5,000.00 | n/a | 1.5%/month | n/a | n/a |
| 02/21 | $30,085.46 | 02/07 | $5,000.00 | $7,924.03 | 1.5%/month | 8 | $31.70 |
| 03/20 | $33,130.20 | 03/20 | $26.00 | $2,924.03 | 1.5%/month | 14 | $20.89 |
| 04/23 | $41,966.48 | | | $33,009.49 | 1.5%/month | 27 | $446.34 |
| 05/24 | $34,819.95 | | | $66,139.69 | 1.5%/month | 0 | $0.00 |
| 06/27 | $39,709.71 | | | $66,113.69 | 1.5%/month | 34 | $1,132.41 |
| 07/26 | $114,692.57 | | | $108,080.17 | 1.5%/month | 31 | $1,700.53 |
| 08/23 | $40,646.46 | | | $142,900.12 | 1.5%/month | 34 | $2,485.94 |
| 09/20 | $96,599.84 | | | $182,609.83 | 1.5%/month | 29 | $2,732.20 |
| 10/28 | $33,056.01 | | | $197,302.40 | 1.5%/month | 20 | $2,881.93 |
| 07/31 | | | | $237,948.86 | 1.5%/month | 28 | $3,491.33 |
| | | | | $334,538.69 | 1.5%/month | 39 | $6,814.50 |
| | | | | $367,694.70 | 1.5%/month | 275 | $53,533.19 |

Total  $367,694.70

Note: $26.00 credited due to misbilling

Total  $75,270.74

"Gillen" Amounts

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 05/19 | $49,455.00 | | | $49,455.00 | 1.5%/month | 73 | $1,805.11 |
| 07/31 | | | | | | | |

$49,455.00          Total Interest          $1,805.11

Total Fees  $417,049.70          Total Interest  $77,075.85

26

1 she had said that she was getting a lot of flak
2 because somebody else working for her or
3 recruiting for her had referred people and she
4 wasn't able to pay that person.
5 And I told her that I needed to know
6 where I stood with what I had submitted through
7 Cheryl and everything, and she told me that she
8 would get back to me the next morning after she
9 sent me an E-mail.
10 Q. What did she say about that person?
11 Did she identify that person?
12 MR. KUBLI: Okay. It assumes facts
13 not in evidence. Objection as asked and
14 answered.
15 THE WITNESS: Can you repeat that? I
16 don't understand what you want me to tell you or
17 what you want me to say.
18 BY MR. ELLEDGE:
19 Q. You just testified that Ms. Giovanni
20 had contacted you --
21 A. Right.
22 Q. -- about a person that possibly had

27

1 referred people to Andrulis?
2 A. That person she said was Mr. Francis,
3 Keith Francis.
4 Q. What did she say to you about Keith
5 Francis?
6 A. She said that he had a lot of invoices
7 in and a lot of things going on and he was in
8 England at that time, and she was trying to get
9 his situation squared away before she could take
10 care of any of my concerns or sit down with me
11 and do anything else.
12 Q. Did she ask you anything else with
13 regard to Keith Francis?
14 A. Yes, she did.
15 Q. What did she ask you?
16 A. She asked me to call a Mr. Shapiro,
17 who was a lawyer. I guess he's here in the
18 metropolitan area. And she wanted me to pose as
19 Mr. Francis and tell Mr. Shapiro that I was
20 Mr. Francis and I wanted him to put pressure on
21 Cencor to pay those invoices.
22 Q. What did you say to that?

28

1 A. I told her that I was not going to do
2 that, and she said this conversation ends now
3 and I didn't hear from her.
4 Q. Okay.
5 A. I did hear from Cheryl Mouchette who
6 called me back and said good job, don't do it.
7 don't do that; I didn't know she wanted you to
8 do that.
9 Q. So you mentioned that you had called
10 Sandy LaBoone or Sandra LaBoone --
11 A. Correct.
12 Q. -- about this October invoice that you
13 had sent Ms. Giovanni?
14 A. Right.
15 Q. And what did Ms. LaBoone tell you?
16 A. She said that Alexx had been
17 terminated. and for reasons that she could not
18 discuss that she wanted me -- she wanted to know
19 when did I send in the invoice. And I told her
20 at that time -- I can't remember exactly what I
21 told her. And she said she would get back to
22 me.

29

1 After about a month I just let it go
2 because I was no longer going to do anything
3 with Pro One Technical Services anymore because
4 I had a run-in or -- not a run-in but a
5 discussion with my boss, and we found that
6 because of some new work that was coming in that
7 it was going to be a conflict of interest.
8 Q. Would you mind directing your
9 attention to Exhibit 1 for Identification, those
10 four invoices, Mr. Nesbitt.
11 A. Yes.
12 Q. Do you recall the company -- do you
13 know of the company names that are listed on
14 those invoices?
15 A. I only know of them through the
16 information that was sent to me, the exact same
17 thing that you have.
18 And I don't know if this was sent to
19 me in error or in hopes that I would portray to
20 be Mr. Francis and relay this to Mr. Shapiro.
21 Q. Did Ms. Giovanni send you those
22 invoices?

8 (Pages 26 to 29)